RIVERA v. MIRANDA.

APPEAL from the District Court of Arecibo.

No. 23.—Decided March 5, 1906.

EVIDENCE—CONTRACTS—VALIDITY AND EFFICACY THEREOF.—A contract of purchase and sale which appears to have been executed with all the formalities required by law, cannot be classified as fictitious nor can it be pronounced null and void unless such disposition was sought during the trial.

ID.—PRIVATE DOCUMENT—PUBLIC DOCUMENT.—A private document acknowledged in court, has the same force and value as a public one, and it may modify or change the provisions of a contract set out in a public instrument, in so far as the parties signing the same are concerned.

ID.—CONTRACT OF LOAN.—Where a public contract of purchase and sale of a particular tract of land has been executed, the purchaser later executing a private document in which it is made to appear that the contract of sale shall exist in his favor only until the vendor should pay him a certain sum of money which he had loaned to be used for the improvement of the property, does not change the nature of the first contract and convert it into a contract of loan secured by the property itself, nor does it contain the necessary elements to constitute a sale with a redemption clause.

ID.—CONTRACTS SUBJECT TO COMPLIANCE OF ONE CONDITION.—Upon the execution of the contract of purchase and sale acknowledging in favor of a vendor the right to recover the property sold by complying with a particular condition, so long as this condition is not complied with, the vendor will be without a cause of action to compel the purchaser to comply with such obligation.

The facts are stated in the opinion.

Mr. *Eduardo Acosta Quintero* attorney for appellant.

Mr. *Martínez Quintero* attorney for appellee.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

By public deed executed in the town of Vega Baja on the 27th of July, 1892, before Notary Félix Lajara, Francisco Miranda y Rivera sold to his brother, Miguel Miranda y Rivera, for the price of 236 *pesos* of the money then current, which he acknowledged having previously received, a tract of land with a dwelling house thereon, situated in the *barrio* of Montes Llanos, in the jurisdiction of Morovis, consisting of 37 *cuerdas*, equivalent to 10 hectares, 71 ares and 10 centares; bounded on the north by the property of Manuel Quintero, formerly owned by Miranda himself; on the east by that of Ysabel Suazo; on the south by that of Francisco Miranda; and on the west by that of the Estate of Alejo Amazaga; which parcel of land, as stated in said document, belonged to the vendor by virtue of its being a part of the 129 *cuerdas* bought of the Royal Treasury at a public sale, situated in the said *barrio* of Montes Llanos, with 3 frame houses built of native wood, with thatch and palm-leaf roofs, under a deed executed in Manati on May 21, 1884, before Notary Francisco Tomás.

Subsequently, under date of August 13th of the same year,

Miguel Miranda y Rivera, by private document, the authenticity of which he has acknowledged, confessed that Francisco Miranda had, by order of the heirs of Rosalía Cordero, conveyed to him the deed to a tract of land which they possessed in the *barrio* of Montes Llanos, in the municipal district of Morovis, consisting of 27 *cuerdas* planted to coffee, plantains, bananas, and *emajaguas;* which deed was to remain in his name until said heirs paid him the sum he had furnished them to meet the payments to the Royal Treasury, and for the maintenance of said estate.

The record shows that, by a decision of November 9, 1901, the Arecibo court declared the sole and universal heirs of Rosa Cordero and Celedonio Rivera, who had died on November 22, 1864, and June 12, 1896, respectively, to be their legitimate children Juana, Francisco Javier, José Elías del Carmen, María Martina, and María Gregoria Rivera y Cordero, and as an additional heir of Celedonio, his other daughter, Juana Paula Rivera y Robles, had by his second wife, Fermina Robles.

On January 27, 1902, María Gregoria, Juana, María Martina, and Francisco Javier Rivera y Cordero, as the intestate heirs of their deceased parents, Rosa Cordero and Celedonio Rivera, brought an action in the Arecibo court against Miguel Miranda, to compel him to execute within three days in favor of the Estate of Rosa Cordero, of which the plaintiffs formed a part, a deed of ownership to 27 *cuerdas* of land situated in the *barrio* of Montes Llanos, in Morovis, with a dwelling house thereon, and planted to coffee, plantains, bananas, *emajaguas,* and other minor fruits, the boundaries of which were set forth in the deed executed on July 27, 1892, by Francisco Miranda to his brother Miguel.

The plaintiffs alleged in support of their demand that about 1883 or 1884, Manuel Quintero, Rosa Cordero, and Francisco Miranda acquired from the state a rural estate situated in the *barrio* of Montes Llanos in Morovis, consisting of 129 *cuerdas,* for the price of 900 *pesos,* payable within the period

of nine years, in addition to the expense of surveying, convey-
ancing, and taking possession; that the partition having been
made among the coowners by common agreement, Rosa Cor-
dero received a tract of 36 *cuerdas,* of which she sold 9, re-
taining a tract of 27 *cuerdas* which she held until her death,
her legal estate succeeding her in the enjoyment and peaceful
possession thereof; that as the title of ownership had been
executed in the name of Francisco Miranda, one of the coown-
ers, because he had furnished the Estate of Rosa Cordero the
sum of 236 *pesos* to meet its share of the payment to the
Royal Treasury, and Francisco afterwards transferred this
credit to his brother Miguel under the condition that he would
transfer to him the deed for the said 27 *cuerdas,* which he did
in the year 1892, although it was provided by a private docu-
ment executed on August 13th of the same year, that the deed
executed by Francisco Miranda to his brother Miguel should
remain in the name of the latter until the Estate of Rosa Cor-
dero should pay him the sum furnished for the payment to the
Royal Treasury and the maintenance of the estate; that the
Estate of Rosa Cordero paid Miguel Miranda the said sum of
236 *pesos,* and that Miguel Miranda had not complied with
the obligation he had assumed of executing to the heirs of
Rosa Cordero the deed to the tract of land consisting of 27
*cuerdas;* for which reason he should be compelled to do so in
accordance with the provisions of article 1098 of the former
Civil Code.

Miguel Miranda y Rivera, in answering the complaint, al-
leged that he had paid Celedonio Rivera various sums, and
had continued to furnish him everything necessary for the
maintenance of the family and of the rural estate of 37 *cuer-
das* until the death of Celedonio, who had given him as se-
curity for payment the said 37 *cuerdas* until his situation
should improve and enable him to make payment, in default
of which Miguel Miranda was to retain the estate in satis-
faction of his claim; that after the death of Celedonio the de-
fendant continued maintaining the estate for the benefit of

the heirs and successors of Celedonio and Rosa Cordero, until the debt had grown to the sum of 3,665.65 *pesos,* provincial currency; that the plaintiffs have not made any payment and continue to owe the defendant the said sum for loans and advances for maintenance; and that the condition imposed in the private document upon which the plaintiffs base their action and which he acknowledges, not having been complied with, the execution of a deed conveying the land cannot be required, as its value does not reach the amount owed him.

Evidence having been heard in the proceedings, the result thereof was the following:

1. An examination of the books kept by Miguel Miranda as a merchant does not show any account whatsoever therein relating to the plaintiffs, Gregoria, Juana, María Martina, and Francisco Javier Rivera y Cordero, nor any account relating to the maintenance of the 27 *cuerdas* of land which are the subject of the action, but there does appear an account under the name of Celedonio Rivera, the beginning and details of which are not stated, showing a balance in favor of Miranda on February 6, 1893, of 629.44 *pesos,* said account being later continued under the name of the heirs of Rosa Cordero until the balance in favor of Miranda had grown to 1,082.51 *pesos;* then the account was also again continued under the name of the heirs of Rosa Cordero until the debt against them reached 2,781.94 *pesos* and the credit in their favor 606.68 *pesos,* said account being later balanced on April 9, 1896, showing a balance in favor of Miranda of 2,164.94 *pesos,* which later grew to 2,834.43 *pesos,* and the account closed on January 1, 1800 (?), with a debit against the heirs of Rosa Cordero of 3,791.42 *pesos,* without the items making up the account having been entered.

2. Miguel Miranda acknowledged the private document of August 13, 1892, and confessed that the Estate of Rosa Cordero had made deliveries of coffee to him, although he could not state the amounts, but if an examination of his books showed that 604.64 *pesos* had been credited it must have been

so, adding that before August 13, 1892, the Estate of Rosa Cordero had no account, it being in the name of the father, Celedonio Rivera, and that he was not able to state the amount of the account at that time; and that it was not true that the amount payable from the Estate of Rivera Cordero was the sum which he delivered to his brother Francisco.

3. Francisco Miranda Rivera alleges that the Estate of Rosalía Cordero owed his brother Miguel 236 *pesos,* provincial money, and delivered to him a number of lots of coffee, and that he knew nothing of the accounts which said Estate kept with his brother.

4. Witnesses Victoriano Pedrosa, Manuel Antonio Mercado, Felipe Pantoja, and Pedro José Rivera, Jr., testified as follows: The first named, that the Estate of Cordero had, on a number of occasions, delivered coffee to Miguel Miranda in lots of 6, 9, and 10 quintals, the price of said product having been 26 to 27 *pesos,* and that he does not know whether the Estate of Rivera Cordero received money from Miguel Miranda, nor whether it owed him anything; the second, that he had on a number of occasions delivered to Miguel Miranda, by order of Elías Rivera, whom he recognized as the owner, 30 quintals of coffee which then sold at 25, 26, and 27 *pesos,* and that he believed that Elías Rivera kept an account with Miguel Miranda, adding that when he delivered coffee he received money and provisions in exchange; the third, that after August 13, 1892, he delivered to Miranda in the year 1895, for account of the Estate of Rivera Cordero, a number of lots of coffee of 12, 14, and 16 quintals, the price of which varied between 25 and 26 *pesos,* and that, later Elías Rivera, a participant in said estate, had informed him that he had delivered 44 quintals, and that he did not know whether Miranda had paid for the coffee, or whether the estate owed him any money, although the witness took provisions for the house of Elías; and the fourth witness, that he had seen Elías Rivera deal and run accounts with Miranda to whom, by reason of such accounts which amounted to 3,000 *pesos,* an estate was

conveyed until the sums were paid; that he does not know the amount the Estate of Cordero owed Miguel Miranda prior to August 13, 1892; that he does not know the amount of the account of Elías in the year 1895; that in the year 1898 Elías owed said amount because he had been told so by Miguel Miranda, and that he did not know whether Elías held a power of attorney from the Estate of Cordero Rivera.

5. María Gregoria Rivera, Francisco Javier Rivera, José Fontán, Eduardo Otero, and Juan Amazaga testified: The first named, that neither she nor the other heirs owed anything to Miguel Miranda, to whom they had not sold any estate and with whom they had no account current; Elías Rivera, who ran the estate although he did not hold a power of attorney, was a brother of the witness; the second, that his father had dealings with Miranda and gave him a deed to the property to secure the debt, which has been paid, the witness not having taken any provisions from the firm of Miranda; the third, that the Estate of Celedonio Rivera had received a number of sums from the firm of Miranda, which amounted to thousands of *pesos,* made payments in coffee and continued receiving provisions, and had conveyed an estate to Miranda as security for the debt, which had not yet been paid; the fourth, that the Estate of Celedonio Rivera had had dealings with and owed Miguel Miranda a certain amount, for the security of which they conveyed some property to him, and that said estate had not paid the debt; and the fifth, that the Estate of Celedonio, represented by Elías Rivera, owed a certain amount to Miguel Miranda and that Elías made deliveries of coffee, but that, however, he did no know whether or not he had received provisions.

We believe it unnecessary to make reference to certain private documents which have been introduced as evidence in the proceedings because, lacking as they do the acknowledgement of the signers thereof, they have no legal value whatsoever.

The Arecibo court, under date of December 18, 1903, rendered a judgment, the conclusions of law and adjudging portion of which read as follows:

"The basis of the demands made in the complaint is the existence of a private document executed on August 13, 1892, by the defendant in favor of the plaintiff estate, in which the conditions of its execution are set forth; which conditions are changed by the stipulations of the public deed of sale executed in substitution thereof by the plaintiff estate in favor of the defendant, the legal value of which is subordinated to the said counter-document, which is effective as between the contracting parties as prescribed in section 1198.

"As a consequence of the private agreement entered into between the parties, the sale made by the Estate of Rivera of the tract of 27 *cuerdas* to the defendant by the public deed executed July 27, 1892, cannot be qualified as a real and actual sale, but is fictitious and simulated, as the estate came into the possession of the defendant for the sole purpose of securing a credit representing sums which he had advanced for the payment of the taxes on the estate, partaking more of the nature of a contract of loan secured by said estate; from which assumption it is necessary to start to determine the rights in controversy in this litigation.

"A contract of loan being involved, for the security of which a certain estate was conveyed to the creditor under the condition that he should hold it until his claim should have been paid, it is impossible to overlook the fact that both rights—that is to say, the right of the debtor to compel the creditor to execute the deed of sale and that of the creditor to retain the estate—are correlative; and that the former having complied with his part of the agreement, the latter should be compelled to perfect the contract in the sense of executing the deed of sale, in view of the fact that the validity and performance of contracts cannot be left to the will of one of the contracting parties. (Section 1223 of the Civil Code.)

"It is proved by the evidence that the plaintiff estate made a number of deliveries of coffee to the defendant, who confessed, in answering the interrogatories propounded to him at the hearing, to having received them, the value of said coffee being 604.04 *pesos,* a sum much in excess of that which served as a basis for the loan transaction, which the plaintiffs have fixed at 236 *pesos,* provincial currency; by which the loan has been more than paid and the obligation performed by the plaintiffs.

"It is not sufficient to destroy the proof of the payment of the

loan and to neutralize its effects, that the defendant should allege that in addition to the loan he had furnished other sums to the said estate, as well as provisions, for the maintenance of the estate, because, apart from the fact that such exceptions could more properly have been pleaded in a cross-complaint in the same proceeding and in the absence of proof to the contrary, such amounts could never refer to the loan on account of having been contracted subsequently; nor do they appear in the books which according to the defendant, contained his account current with the plaintiffs.

"In all kinds of contracts the contracting parties may make such agreements as they may deem advisable provided they be not contrary to the law; and, according to section 1760 of the Civil Code in force, in contracts of loan secured by pledge, the law prohibits agreements of forfeiture, and the creditor can not appropriate to himself the things given in pledge or mortgage, nor dispose thereof; for which reason the defendant, upon enforcing his rights, could not appropriate to himself the estate which he holds merely as a pledge.

"In view of the provisions cited and sections 1223 and 1256, and others of general application, we adjudge that we should sustain, and we do sustain, the complaint filed by the plaintiff estate against Miguel Miranda Rivera, the defendant; and, consequently, we adjudge him to convey to the plaintiffs, within three days, the 27 *cuerdas* of land situated in the *barrio* of Montes Llanos, municipal district of Morovis, the description and boundaries of which are set forth in the deed executed in Vega Baja on July 27, 1892, by Francisco Miranda, on behalf of the Estate of Rivera, to Miguel Miranda; and we warn him that such deed will be executed by the court if he fails to do so within the period fixed. All the costs of the action are taxed against the defendant.

"Thus, by this our judgment, do we pronounce, order and sign.— Carlos Franco Soto; Otto Schoenrich; Ramón Nadal."

From this judgment counsel for Miguel Miranda took an appeal, which was allowed, but he did not file any brief in this Supreme Court because the law in force at the time the record was delivered to him did not so require.

In deciding the appeal taken the following points of law must be considered:

1. The nature of the contract embodied in the public instrument executed on July 27, 1892, before Notary Felix

Lajara, of Vega Baja, by Francisco Miranda Rivera and his brother, the defendant, Miguel Miranda Rivera.

2. The nature and juridical scope of the private document executed in Morovis on August 13th of the same year, signed by Miguel Miranda and acknowledged by him in court.

3. The legal effects of said private document in view of the result of the evidence submitted in the case.

We do not hesitate to affirm that the public deed of July 27, 1892, reveals a real contract of purchase and sale of 37 *cuerdas* of land entered into by Francisco Miranda Rivera, as vendor, and Miguel Miranda Rivera, as vendee, for the price of 236 *pesos,* in the currency of that time, which the vendor confessed having received prior to the execution of the deed.

This contract of purchase and sale cannot be qualified as fictitious and simulated, but is real and positive, because it contains all the elements which go to make it up according to the provisions of article 1445 of the former Civil Code and section 1348 of the revised Code in force.

It has not been argued that said contract is bad from a civil standpoint, nor has its annulment been sought in the action, which is an indispensable requisite to permit of the annulment thereof and the effects consequent to such a decision.

We accept as valid and efficient in law the private document executed by Miguel Miranda on August 13, 1892, because it has been acknowledged by the latter in court and, therefore, has the same legal value as a public instrument, according to article 1225 of the former Civil Code, section 1193 of the revised Code.

This private document could change and, as a matter of fact, did change, with respect to Miguel Miranda, the conditions of the contract of purchase and sale stipulated in the public instrument of July 27, 1892, because Miranda agreed in said private document that the said public deed should remain or continue in his name until the heirs of Rosalía Cordero should pay him a sum which he had furnished them to make the payments to the Royal Treasury and to maintain

the estate which had been sold to him by Francisco Miranda by order, he alleged, of said heirs.

Such a condition did not materially alter the contract of purchase and sale entered into between Francisco and Miguel Miranda and deprive it of its real nature and convert it into a contract of loan secured by the estate sold, but was merely a recognition of the rights of the heirs of Rosalía Cordero to redeem the estate sold, upon payment of the sum that he had furnished them for the purposes mentioned in said private document; that is to say, to make payments to the Royal Treasury and to maintain said estate.

If such condition had been stipulated in such terms as to reserve to the heirs of Rosalía Cordero the right to recover an estate sold by them, upon the payment to the purchaser of the price of the sale, we would say that the estate purchased by Miguel Miranda was subject to a conventional redemption; but we do not find in this case all the requisites necessary to show the existence of such conventional redemption which, had it existed, could have lasted only for four years from the date of the contract, according to the first paragraph of article 1508 of the former Civil Code, reproduced in section 1411 of the Revised Code.

We believe that in this case there has only been an acknowledgment by Miguel Miranda in favor of the heirs of Rosalía Cordero of their right to the conveyance of the property sold to them, upon the payment to Miranda of the sum they owed him.

The record does not show the amount of the sum owed on the date that Miguel Miranda signed the private document referred to because it is not mentioned therein, nor do his books show it; and although the plaintiffs allege that said sum amounted to 236 *pesos,* which is the price of the tract of land sold by Francisco Miranda to his brother Miguel, which fact Francisco Miranda also affirmed in his testimony, we cannot accept this as conclusive in view of the fact that the private document states that the sum owed by the heirs of Rosalía

Cordero was due to advances made for payments to the Royal Treasury and the maintenance of the estate of 27 *cuerdas* sold by Francisco Miranda to his brother Miguel.

Nevertheless, even though we should admit that the sum owed to Miguel Miranda by the heirs of Rosalía Cordero was 236 *pesos,* it has not been proved in the action that said sum has been paid by said heirs to Miguel Miranda, because although the books of the latter contain a credit of 606.68 *pesos* in favor of the heirs of Rosa Cordero in account with Miranda, there is also a debit item against said heirs of 2,781.94 *pesos;* and it is not possible to infer that the total of 606.68 *pesos* was paid Miranda in settlement of the debt of 236 *pesos* to which the plaintiffs refer, because from the books of Miranda it is to be deduced that said amount was delivered to Miranda to be credited to the account of Rosalía Cordero which amounted to a larger sum.

If it has not been proved that the heirs of Rosalía Cordero paid Miguel Miranda the sum which they owed him on August 13, 1892, the date of the private document, and it is not even possible to determine said amount from the evidence introduced in the action, it is evident that it is not possible to affirm that the heirs of Rosalía Cordero have complied with the *sine qua non* condition to permit them now to require Miguel Miranda to convey to them the deed to the ownership of the estate, as they seek in their complaint.

The obligation contracted by Miranda was a conditional one; and the condition imposed upon the heirs of Rosa Cordero not having been performed, they have no cause of action to seek the performance of that obligation.

For the reasons stated, the judgment appealed from should be reversed and judgment rendered in favor of Miguel Miranda Rivera, with the costs of the action and appeal against the appellants.

*Reversed.*

Chief Justice Quiñones, and Justice Figueras, MacLeary and Wolf concurred.